IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES HARRIS,

    Plaintiff,                       No. CIV S-09-1052 FCD DAD P

    vs.

SERGEANT ORRICK,

    Defendant.                  FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion for summary judgment brought on behalf of defendant Orrick-Schlabes pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed a brief opposition to the motion.

**BACKGROUND**

        Plaintiff is proceeding on his original complaint against defendant Orrick-Schlabes. According to the complaint, on June 24, 2008, defendant Orrick-Schlabes was the active duty sergeant on CSP-Solano's Yard II and was aware that white inmates were going to attack black inmates because she received a note stating as much. However, defendant Orrick-Schlabes failed to prevent the attack, resulting in plaintiff's injuries. Plaintiff claims that defendant Orrick-Schlabes violated his rights under the Eighth Amendment and requests

1

damages. (Compl. at 5 & Attachs.)

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

1   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
2   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
3   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
4   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
5   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
6   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
7   1436 (9th Cir. 1987).

8   　　　　　In the endeavor to establish the existence of a factual dispute, the opposing party
9   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
11  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
12  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
13  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
14  committee's note on 1963 amendments).

15  　　　　　In resolving the summary judgment motion, the court examines the pleadings,
16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
17  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
18  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
19  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
20  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
21  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
22  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
23  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
24  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
25  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
26  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

# OTHER APPLICABLE LEGAL STANDARDS

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. The Eighth Amendment and Failure to Protect

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. Whitley v. Albers, 475 U.S. 312, 319 (1986). See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel

and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). It is well established that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense against society.'" Id. at 834. However, prison officials do not incur constitutional liability for every injury suffered by a prisoner at the hands of another prisoner. Id.

To prevail on such a claim the plaintiff must show that objectively he suffered a "sufficiently serious" deprivation. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's deprivation to occur. Farmer, 511 U.S. at 834. In this regard, a prison official violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. Under this standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety. Id.

III. Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

statutory or constitutional right and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Although the court was once required to answer these questions in order, the United States Supreme Court has recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 129 S. Ct. at 818-21.

In deciding whether the plaintiff's rights were clearly established, "[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

**DEFENDANT ORRICK-SCHLABES' MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendant's Statement of Undisputed Facts and Evidence</u>

Defendant Orrick-Schlabes' statement of undisputed facts is supported by citations to a declaration signed under penalty of perjury by the defendant and a copy of a CSP-Solano incident report.

The evidence submitted by the defendant establishes the following.  On June 19, 2008, a white inmate who associated with black inmates battered another white inmate with a weapon on CSP-Solano's Facility II grounds.  As a result, prison administrators placed white and black inmates housed in Facility II on a modified program.  (Def.'s SUDF 3-4, Exs. B & C.)

On June 24, 2008, correctional officers received confidential information that white inmates housed in H-Dorm were planning a possible attack on black inmates after dinner in retaliation for the June 19, 2008, incident.  H-Dorm is a large room similar in size to a gymnasium and is filled with triple bunk beds and lockers.  In light of the confidential information, prison administrators issued an order prohibiting white and black inmates from eating dinner together in the dining hall.  In addition, prison administrators placed extra correctional staff at H-Dorm to process white inmates back in after dinner.  Three officers armed with L6 40mm launchers were placed on the ground with a cover officer.  One sergeant and one lieutenant were placed at the H-Dorm door.  One additional gunner officer was placed on the gun walk.  (Def.'s SUDF 5-9, Exs. B & C.)

As white inmates returned to H-Dorm from dinner, correctional officers ordered them to lie down outside so they could search them for weapons or contraband.  At the same time, defendant Orrick-Schlabes and Lieutenant Kesterson entered H-Dorm and ordered all inmates to take their shoes off and sit on their assigned bunks.  Inmates must take their shoes off because shoes/boots can be used against another inmate in a fight.  Inmates must sit on their assigned bunks to eliminate as much inmate movement as possible.  (Def.'s SUDF 10-14, Exs. B & C.)

After issuing the orders, defendant Orrick-Schlabes left H-Dorm and walked outside where white inmates were laying on the ground waiting to be searched.  Correctional officers had finished strip-searching four white inmates and were escorting them back into H-Dorm when two of them ran and attacked a black inmate.  A fight broke out between the four white inmates and several black inmates inside H-Dorm.  Officers ordered all inmates to lie

down. (Def.'s SUDF 15-18, Exs. B & C.)

Defendant Orrick-Schlabes did not know that the four white inmates would attack black inmates nor was she in a position to stop the attack from taking place. Defendant Orrick-Schlabes did not see what happened in H-Dorm to cause plaintiff's alleged injuries because she was outside overseeing the white inmates laying on the ground waiting to be searched. When defendant Orrick-Schlabes re-entered H-Dorm, she ordered all inmates not on their assigned bunks to lie on the floor so correctional officers could search them and escort them out of H-Dorm. (Def.'s SUDF 24-25, Exs. B & C.)

According to her declaration, defendant Orrick-Schlabes did not receive any information, written or verbal, from any inmate regarding a planned attack by white inmates on black inmates. Defendant Orrick-Schlabes did not give any orders to separate black and white inmates. Defendant Orrick-Schlabes did not give any orders regarding the re-housing of white inmates after dinner. When defendant Orrick-Schlabes arrived at work and started her shift on June 24, 2008, her superiors had already issued an order separating white and black inmates during meals and requiring officers to search white inmates before they re-entered H-Dorm. Defendant Orrick-Schlabes declares that she only followed those orders from her superiors and ensured that officers under her command carried out those orders as well. (Def.'s SUDF 19-23, Ex. B.)

II. <u>Defendant Orrick-Schlabes' Arguments</u>

Defense counsel argues that defendant Orrick-Schlabes is entitled to summary judgment in her favor on plaintiff's Eighth Amendment claim because there is no evidence before the court indicating that she was deliberately indifferent to plaintiff's safety. Specifically, counsel contends that defendant Orrick-Schlabes was not aware that the four white inmates being escorted by officers would attack black inmates in H-Dorm on the evening in question. In this regard, she did not know of any substantial risk of harm to plaintiff. Moreover, counsel argues that even if defendant Orrick-Schlabes knew of some risk of harm to plaintiff, she acted

reasonably to prevent it by providing coverage at H-Dorm.  (Def.'s Mem. of P. & A. at 6-8.)

Defense counsel also argues that defendant Orrick-Schlabes is entitled to qualified immunity.  Specifically, counsel contends that defendant Orrick-Schlabes did not violate plaintiff's constitutional rights, and that a reasonable officer in her position would not have known that any of her actions violated clearly established law.  (Def.'s Mem. of P. & A. at 8-9.)

III. Plaintiff's Opposition

In his brief opposition to defendant's motion for summary judgment plaintiff argues that the court should look into Officer Gamble and Officer Baskerville's incident report statements.  According to plaintiff, those two officers acknowledge that correctional officers knew that there was going to be an attack on black inmates because they received an anonymous note stating as much.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1.)

**ANALYSIS**

The court finds that defendant Orrick-Schlabes has borne the initial burden of demonstrating that there is no genuine issue of material fact with respect to the adequacy of protection she provided plaintiff on June 24, 2008.  The evidence before the court establishes the following.  On June 24, 2008, correctional officers did receive confidential information that white inmates housed in H-Dorm were planning a possible attack on black inmates after dinner.  In response to that information, prison administrators issued an order prohibiting white and black inmates from eating dinner together in the dining hall.  They also assigned extra correctional officers to cover H-Dorm.  (Def.'s Exs. B & C.)

As white inmates returned to H-Dorm from dinner, correctional officers ordered them to lie down outside so they could search them for weapons or contraband.  Meanwhile, for the safety of the inmates, defendant Orrick-Schlabes and Lieutenant Kesterson entered H-Dorm and ordered all of the inmates to take their shoes off and sit on their assigned bunks.  (Def.'s Exs. B & C.)  After issuing the orders, defendant Orrick-Schlabes left H-Dorm and walked outside where the white inmates were laying on the ground waiting to be searched.  Correctional officers

had finished strip-searching four white inmates and were escorting them back into H-Dorm when two of those inmates ran and attacked a black inmate. A fight then broke out between the four white inmates and several black inmates inside H-Dorm. Officers ordered all inmates to lie down. (Def.'s Exs. B & C.)

Defendant Orrick-Schlabes was not aware that the four white inmates being escorted by officers would attack black inmates in H-Dorm. In addition, defendant Orrick-Schlabes did not see what happened to cause plaintiff's alleged injuries. As noted above, she was outside overseeing the white inmates laying on the ground waiting to be searched when the fight in H-Dorm ensued. In this regard, she was not in a position to prevent any attack on plaintiff. When defendant Orrick-Schlabes re-entered H-Dorm, she ordered all inmates not on their assigned bunks to lie on the floor so that correctional officers could search them and escort them out of H-Dorm. (Def.'s Exs. B & C.)

Based on this evidence, the court finds that defendant Orrick-Schlabes did not know of any substantial risk of serious harm to plaintiff's health or safety. See Farmer, 511 U.S. at 844 ("prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment"); Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (under the deliberate indifference standard a prison official must have more than a "mere suspicion" that an attack will occur). Nor did she disregard any substantial risk of serious harm to plaintiff. To the extent that defendant Orrick-Schlabes knew of any general risk to plaintiff and other inmates, she took reasonable steps to abate that. See Farmer, 511 U.S. at 844-45. ("Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001) ("Regardless of whether it was prudent for [prison officials] to order the release of the yard after learning that Hispanics were planning to attack 'one of their own,' there is no evidence that [the defendant] should have done anything differently once this decision was made. He kept a close eye on the inmates once they were

released and, when trouble began, he immediately shouted 'yard down' and fired warning shots."). Thus, in this case the burden shifts to plaintiff to establish the existence of a genuine issue of material fact precluding summary judgment in defendant's favor.

The court has considered plaintiff's opposition to the pending motion for summary judgement as well as the allegations of his complaint. The undersigned finds that plaintiff has failed to submit any evidence establishing a legitimate dispute as to any genuine issue of material fact. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading. . . ."). In his opposition, plaintiff merely argues that statements by Officers Gamble and Baskerville demonstrate that correctional officers learned through an anonymous note that there was going to be an attack on black inmates. Plaintiff has not attached any such statements to his opposition as evidence. In any event, there is no dispute that prison officials received confidential information about a possible attack by white inmates on black inmates. Moreover, plaintiff does not dispute the evidence submitted by defendant Orrick-Schlabes as to the protective actions taken in response. Accordingly, without more, no reasonable fact finder could conclude based on the evidence before the court that defendant Orrick-Schlabes knew or should have known of a substantial risk of serious harm to plaintiff and that she disregarded that risk.

For the reasons set forth above, the court concludes that the defendant Orrick-Schlabes is entitled to summary judgment in her favor on plaintiff's Eighth Amendment claim.[1]

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Orrick-Schlabes' July 15, 2010 motion for summary judgment (Doc. No. 23) be granted; and

2. This action be closed.

---

[1] In light of the court's findings and recommendations herein, the court declines to address defendant's qualified immunity argument.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 1, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
harr1052.57(2)